1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEBBIE L. VIALE, et al.,

Plaintiffs,

v.

AIR & LIQUID SYSTEMS CORP, et al.,

Defendants.

Case No.  19-cv-00038-MMC

**ORDER GRANTING DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant Exxon Mobil Corporation's ("Exxon") Motion for Summary Judgment, filed May 13, 2020.  Plaintiffs have filed opposition, to which Exxon has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the Second Amended Complaint ("SAC"), plaintiffs allege Ronald Viale ("Viale") "used, handled, or was otherwise exposed to asbestos and asbestos containing products," that he "contracted the terminal cancer, mesothelioma" as a result of such exposure, and that, in July 2018, he died.  (See SAC, Introduction at 3:3-7, ¶ V.)  Plaintiffs allege that such exposure occurred at "various locations," including one location owned by Exxon, specifically, the "Benicia Refinery."  (See SAC, Introduction at 5:4, 6, ¶ 45, Ex. A.)

Plaintiffs who are, respectively, the decedent's wife and daughter, assert against Exxon a single claim titled "Negligence – Premises Owner/Contractor Liability."  During

---

[1] By order filed June 18, 2020, the Court took the matter under submission.

1   discovery, plaintiffs, in response to a special interrogatory propounded by Exxon,

2   explained the basis for the negligence claim, as follows:

3       Viale worked in close proximity to other contractors and trades at [the
        Benicia Refinery] which exposed him to asbestos dust.  [Exxon] negligently
4       hired these other contractors and trades who worked in close proximity to
        [Viale] and exposed him to asbestos dust.  [Exxon] failed to supervise these
5       contractors and trades, especially in failing to protect the safety of workers
        from asbestos dust.
6
    (See Ogdie Decl. Ex. B at 4.)
7
        By the instant motion, Exxon argues plaintiffs lack evidence to support a finding
8
    that Exxon negligently hired any of the "other contractors and trades" or that it negligently
9
    failed to supervise such other contractors or trades.[2]
10
                                        **DISCUSSION**
11
        A moving party who does not have the "ultimate burden of persuasion at trial" may
12
    meet its initial burden to show entitlement to summary judgment by "show[ing] that the
13
    nonmoving party does not have enough evidence of an essential element of its claim or
14
    defense to carry its ultimate burden of persuasion at trial."  See Nissan Fire & Marine Ins.
15
    Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  Put another way, the movant may
16
    meet its initial burden "by showing – that is, pointing out to the district court – that there is
17
    an absence of evidence to support the nonmoving party's case."  See id. at 1105 (internal
18
    quotation and citation omitted).  Alternatively, the moving party may meet its initial burden
19
    by "produc[ing] evidence negating an essential element of the nonmoving party's claim."
20
    See id. at 1102.
21
        In seeking summary judgment, Exxon relies on plaintiffs' initial disclosures,
22
    plaintiffs' responses to Exxon's special interrogatories, excerpts from the deposition of
23
    each plaintiff, excerpts from the depositions of five individuals who worked with or around
24
    Viale at job sites, union records, social security earnings records (see Ogdie Decl. Ex. B-
25

26

27      [2] Exxon alternatively argues plaintiffs lack sufficient evidence to show Viale was
    exposed to asbestos while working at the Benicia Refinery.  In light of the Court's findings
28   set forth below, the Court does not further address herein this alternative argument.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   M), and a declaration by a former Exxon project engineer (see Stangel Decl.).  Having

2   reviewed that evidence, the Court finds Exxon has met its initial burden.

3   Where, as here, the party moving for summary judgment has met its initial burden

4   to "demonstrate the absence of a material fact," see Celotex Corp. v. Catrett, 477 U.S.

5   317, 323 (1986), the nonmoving party, to defeat the motion, must, by affidavits or other

6   evidence, "designate specific facts showing that there is a genuine issue for trial," see id.

7   at 324 (internal quotation and citation omitted).  In that regard, plaintiffs have offered

8   excerpts from deposition testimony given in this and another case, a union record, and

9   documents produced by Exxon.  (See Belantis Decl. Exs. A-H.)  Additionally, plaintiffs

10  have offered a declaration from Charles Ay ("Ay"), who is one of plaintiffs' disclosed

11  experts and also a lay witness.

12  Citing to excerpts from deposition testimony given by three deponents, specifically,

13  Benjamin Upton ("Upton"), Craten Sanders ("Sanders"), and John Hernandez

14  ("Hernandez"), and to the above-referenced declaration by Ay, plaintiffs argue they have

15  submitted evidence sufficient to raise a triable issue as to whether Exxon was negligent.

16  The Court disagrees.

17  At the outset, the Court notes that plaintiffs do not address in their opposition the

18  theories of liability set forth in their responses to Exxon's special interrogatories,

19  specifically, that Exxon negligently hired or supervised independent contractors working

20  at the Benicia Refinery.  Rather, plaintiffs argue, a triable issue exists as to whether

21  Exxon's own employees engaged in negligent acts that caused or contributed to the

22  claimed injury.[3]  The Court next turns to the evidence on which plaintiffs rely to raise a

23  triable issue.

24  First, plaintiffs rely on Upton's deposition testimony that, while working at the

25

26      [3] As Exxon points out, plaintiffs did not update their responses to Exxon's special
27  interrogatories to reflect such additional theory.  See Fed. R. Civ. P. 26(e).  Exxon has
    not, however, objected to the Court's consideration of the evidence plaintiffs offer in
28  support thereof.  See Fed. R. Civ. 37(c)(1).

1   Benicia Refinery, he saw an "Exxon inspector" open "plugs in the insulation" used as

2   "inspection ports for the pipe" and then "scrape whatever material was on the pipe" for

3   purposes of "measur[ing] the thickness of the pipe[ ]." (See Belantis Decl. Ex. A at

4   364:17-19, 365:11-25.) Assuming such testimony is sufficient to support a finding that

5   the scraping caused asbestos dust to become airborne, Upton did not testify, nor do

6   plaintiffs point to any other evidence to show, when it occurred, let alone that it occurred

7   at a time when Viale was at the Benicia Refinery and in the vicinity of that event.

8        Second, plaintiffs rely on Hernandez's deposition testimony that, while he and

9   Viale were working at the Benicia Refinery, "unit operators" employed by Exxon "worked

10  around" them. (See id. Ex. D at 186:21-187:24.) According to Hernandez, the work unit

11  operators performed was "monitor[ing] the flow of whatever fluids [were] going through

12  the equipment" and "watching the gauges and checking up on that." (See id. Ex. D at

13  187:25-188:10.) He stated unit operators "also maintained some of the equipment," but

14  had no recollection of any unit operator doing so while in the vicinity of Viale. (See id. Ex.

15  D at 187:10-17.) Plaintiffs thus have not offered any evidence from Hernandez, nor have

16  they otherwise done so, that unit operators engaged in any conduct that could have

17  exposed Viale to asbestos dust or otherwise caused or contributed to any injury Viale

18  incurred at the Benicia Refinery.

19       Third, plaintiffs rely on Sanders' deposition testimony that, when he worked with

20  Viale at the Benicia Refinery on three occasions in the "[e]arly 80s" and/or "[m]id 80s," he

21  saw, on at least one of those occasions, Viale go to a "warehouse" and obtain "parts"

22  from a "storekeeper" who "had an Exxon uniform on." (See id. Ex. C at 47:4-22, 85:7-

23  86:7.) Plaintiffs identify no evidence, however, from which it can be inferred that the parts

24  Viale obtained contained asbestos, were defective, or otherwise caused or contributed to

25  any injury he incurred at the Benicia Refinery. See McKown v. Wal-Mart Stores, Inc., 27

26  Cal. 4th 219, 225 (2002) (holding "hirer of an independent contractor" can be held liable

27  where, "by negligently furnishing unsafe equipment to the contractor, [hirer] affirmatively

28  contributes to the injury of an employee of the contractor").

4

United States District Court
Northern District of California

1    Fourth, plaintiffs rely on Sanders' deposition testimony that, during the above-

2    referenced three times he worked with Viale at the Benicia Refinery, Exxon did not warn

3    them that asbestos was present on its premises.  (See Belantis Decl. Ex. B at 20-23.)

4    Plaintiffs point to no evidence, however, to support a finding that any asbestos at the

5    Benicia Refinery in the 1980s was "concealed" and that Viale's employer did "not know

6    and could not [have] reasonably ascertain[ed]" its presence.  See Kinsman v. Unocal

7    Corp., 37 Cal. 4th 659, 675 (2005) (setting forth requisite showing for purposes of holding

8    hirer of independent contractor liable for not disclosing "hazardous condition" of which it

9    knew or reasonably should have been aware).

10    Fifth, plaintiffs rely on Sanders' deposition testimony that, when asked if "Exxon

11    had the ability and authority to stop the work of any of the contractors," he answered,

12    "[w]ell, of course," noting "[w]ell, it's a refinery[;] [t]hey're flat right up in front: 'This is my

13    refinery; you're gonna do it my way,'" and adding, "[a]nd rightfully so because doing

14    stupid shit in a refinery usually kills people."  (See Belantis Decl. Ex. C at 238:14-24.)

15    Although the hirer of an independent contractor can be held liable when its exercise of

16    "active control" over the work of such contractor causes injury, see McDonald v. Shell Oil

17    Co., 44 Cal. 2d 785, 788-90 (1955), "active control" does not include the owner's exercise

18    of "a broad general power of supervision and control . . . so as to insure satisfactory

19    performance," see id. at 790 (excluding from "active control" "the right to inspect" and

20    "the right to stop the work"), and plaintiffs have not offered any evidence, either from

21    Sanders or otherwise, that whatever control Exxon may have exercised, it did so in a

22    manner that harmed Viale.  See Hooker v. Department of Transportation, 27 Cal. 4th

23    198, 214-15 (2002) (holding property owner that "retained control over safety conditions

24    at the worksite," and knowingly "permitted" unsafe practice to continue at worksite, not

25    liable for death of independent contractor's employee, where owner "did not direct"

26    employee to engage in unsafe practice) (emphasis omitted).

27    Lastly, plaintiffs rely on statements in Ay's declaration that, when Ay worked at the

28    Benicia Refinery, he "recall[s] that Exxon employees used compressed air to blow

United States District Court
Northern District of California

5

asbestos dust throughout the refinery" (see Ay Decl. ¶ 10), and that "[t]here was

asbestos everywhere [at] the Benicia Refinery" (see id. ¶ 8).[4][5]  The record, however,

does not contain evidence from which it reasonably can be inferred that the

circumstances pertaining at the time Ay worked at the Benicia Refinery were the same as

those at the time Viale worked there.  Viale worked at the Benicia Refinery in July 1968

(see Belantis Decl. Ex. B), and Ay worked there either in the "quarter after . . . Viale left,"

i.e., in the fourth quarter of 1968, or in 1969 (see Ay Decl. ¶ 3; Armstrong Decl. Ex. N at

43:5-17).  It is undisputed that the Benicia Refinery "was being built basically from the

ground up in 1968," that it was "a brand new refinery" occupying "several hundred acres"

(see Belantis Decl. Ex. at 50:15-51:2), and that, as late as the time Ay worked there,

Exxon was "doing some testing of equipment" and was not, to Ay's knowledge, "making

products" (see Armstrong Decl. Ex. N at 48:11-18).

Moreover, even if the circumstances at the Benicia Refinery remained constant,

i.e., assuming it had not been in a state of development, Ay provides no information as to

where, in the several hundred acres constituting the Benicia Refinery, he worked.

Consequently, Ay provides no evidence that whatever conduct he observed also

occurred in the area in which Viale worked,[6] nor have any of the individuals who worked

with Viale testified or provided a declaration that any of the above-described conduct

[4] Although Exxon objects to these statements as conclusory, the Court construes them as limited to Ay's personal observations regarding the area(s) in which he worked.

[5] Ay also stated in his declaration that "there was a Saw Room on the Benicia Refinery property" and that "[t]hick layers of asbestos dust were blown from that Saw Room daily." (See id. ¶ 7.)  Ay does not, however, identify the employer of any persons engaged in such conduct, and plaintiffs do not rely on Ay's statements about the Saw Room to show Exxon employees engaged in negligent conduct, but, rather, to show Viale was exposed to asbestos while working at the Benicia Refinery. (See Pls.' Opp. at 21:2-8.)

[6] The Benicia Refinery has an "onplot," which consists of the "actual processing units," and an "offplot," which consists of "the auxiliary things that surround[ ]" the "onplot," such as the "tanking," the "pipelines . . . that go down to the docks," the "dock," and the "storage tanks."  (See Belantis Decl. Ex. A at 51:22-52:19.)  Viale worked only in the "offplot."  (See id. Ex. A at 51:13-16.)

1  occurred at the Benicia Refinery at the time they worked there, let alone in the area in

2  which Viale worked.

## CONCLUSION

4          As noted, where the party moving for summary judgment has met its initial burden,

5  the opposing party must come forward with evidence sufficient to raise a triable issue.

6  Here, as discussed above, the witnesses' statements and documents offered by plaintiffs,

7  whether considered separately or together, fail to do so.

8          Accordingly, Exxon's motion for summary judgment is hereby GRANTED.

9          **IT IS SO ORDERED.**

11  Dated: July 14, 2020

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California